# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **SAINT LAWRENCE COMMUNICATIONS LLC,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 2:14-cv-1055** |
| | **The Hon. Rodney Gilstrap** |
| **LG ELECTRONICS, INC., LG ELECTRONICS ALABAMA, INC. AND LG ELECTRONICS U.S.A., INC.,** | **Jury Trial Demanded** |
| **Defendants.** | |

**ANSWER AND COUNTERCLAIMS OF LG ELECTRONICS, INC., LG ELECTRONICS ALABAMA, INC. AND LG ELECTRONICS U.S.A., INC. TO SAINT LAWRENCE COMMUNICATIONS LLC'S COMPLAINT FOR PATENT INFRINGEMENT**

Defendants LG Electronics, Inc. ("LGE"), LG Electronics Alabama, Inc. ("LGEAI") and LG Electronics U.S.A., Inc. ("LGEUS") (collectively, "LG"), by and through their attorneys, hereby answer the Complaint for Patent Infringement ("Complaint") filed by Plaintiff Saint Lawrence Communications LLC ("SLC"), and file the Counterclaims enumerated below.  LG denies the allegations and characterization in SLC's Complaint unless expressly admitted in the following paragraphs:

## PARTIES

1.      LG is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1 of the Complaint, and, therefore, denies all such allegations.

2.      LGE admits that it is a Korean entity with a principal executive office at LG Twin Towers, 20 Yeouido-dong, Yeongdeungpo-gu, Seoul 150-721, South Korea, and that it may be

served in accordance with the terms of the Hague Convention.

3.      LGEAI admits that it is an Alabama corporation and a wholly-owned subsidiary of LGE.  LGEAI also admits that it may be served through its registered agent, Geinha Lee.  LGEAI denies that its principal place of business is at 2155 Eagle Parkway, Fort Worth, Texas 76177.

4.      LGEUS admits that it is a Delaware corporation with its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632, and that it is a wholly-owned subsidiary of LGE.  LGEUS also admits that it may be served through its registered agent, United States Corporation Co.

## JURISDICTION AND VENUE

5.      LG admits that this action purports to arise under the Patent Laws of the United States, and that the Court has original jurisdiction over patent infringement actions.  LG is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations of Paragraph 5 of the Complaint, or Paragraph 5 states legal conclusions to which no response is required, and LG therefore denies all such allegations.

6.      LG denies that it has committed any acts of infringement, in this District or elsewhere.  LG also denies that venue in the Eastern District of Texas is proper.  Any remaining allegations in Paragraph 6 of the Complaint are either legal conclusions that require no response, or to the extent they require a response, are denied by LG.

## SUMMARY

7.      LG is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7 of the Complaint, and, therefore, denies all such allegations.

8.      LG is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 8 of the Complaint, and, therefore, denies all such allegations.

9.     LG is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 9 of the Complaint, and, therefore, denies all such allegations.

10.     LG is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10 of the Complaint, and, therefore, denies all such allegations.

11.     LG is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11 of the Complaint, and, therefore, denies all such allegations.

12.     LG is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 12 of the Complaint, and, therefore, denies all such allegations.

13.     LG is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 13 of the Complaint, and, therefore, denies all such allegations.

14.     LG is without knowledge or information sufficient to form a belief as to the truth of the allegations as to the relationship between VoiceAge Corporation ("VoiceAge") and SLC, and, therefore, denies all such allegations.  LGE admits that it is aware of a pending lawsuit in Germany against LG Electronics Deutschland GmbH filed by Saint Lawrence Communications GmbH.  LG denies all remaining allegations of Paragraph 14 of the Complaint.

## COUNT I
### LG's Infringement of the '805 Patent

LG specifically denies any allegations or characterizations embodied in the headings.

15.     LG admits that U.S. Patent No. 6,795,805 ("the '805 Patent") on its face states an issue date of September 21, 2004 and is entitled "Periodicity Enhancement in Decoding Wideband Signals."   LG denies that the '805 patent was duly and legally issued after a full and fair examination.  LG is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations of Paragraph 15 of the Complaint, and, therefore, denies all such allegations.

16.     LG denies the allegations of Paragraph 16 of the Complaint.

17.     LG denies the allegations of Paragraph 17 of the Complaint.

18.     LG denies the allegations of Paragraph 18 of the Complaint.

## COUNT II
### LG's Infringement of the '524 Patent

LG specifically denies any allegations or characterizations embodied in the headings.

19.     LG admits that U.S. Patent No. 6,807,524 ("the '524 Patent") on its face states an issue date of October 19, 2004 and is entitled "Perceptual Weighting Device and Method for Efficient Coding of Wideband Signals."  LG denies that the '524 patent was duly and legally issued after a full and fair examination.  LG is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations of Paragraph 19 of the Complaint, and, therefore, denies all such allegations.

20.     LG denies the allegations of Paragraph 20 of the Complaint.

21.     LG denies the allegations of Paragraph 21 of the Complaint.

22.     LG denies the allegations of Paragraph 22 of the Complaint.

## COUNT III
### LG's Infringement of the '802 Patent

LG specifically denies any allegations or characterizations embodied in the headings.

23.     LG admits that U.S. Patent No. 7,151,802 ("the '802 Patent") on its face states an issue date of December 19, 2006 and is entitled "High Frequency Content Recovering Method and Device for Over-Sampled Synthesized Wideband Signal."  LG denies that the '802 patent was duly and legally issued after a full and fair examination.  LG is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations of Paragraph 23 of the Complaint, and, therefore, denies all such allegations.

24.     LG denies the allegations of Paragraph 24 of the Complaint.

25.     LG denies the allegations of Paragraph 25 of the Complaint.

26.     LG denies the allegations of Paragraph 26 of the Complaint.

## COUNT IV
### LG's Infringement of the '521 Patent

LG specifically denies any allegations or characterizations embodied in the headings.

27.     LG admits that U.S. Patent No. 7,260,521 ("the '521 Patent") on its face states an issue date of August 21, 2007 and is entitled "Method and Device for Adaptive Bandwidth Pitch Search in Coding Wideband Signals."  LG denies that the '521 patent was duly and legally issued after a full and fair examination.  LG is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations of Paragraph 27 of the Complaint, and, therefore, denies all such allegations.

28.     LG denies the allegations of Paragraph 28 of the Complaint.

29.     LG denies the allegations of Paragraph 29 of the Complaint.

30.     LG denies the allegations of Paragraph 30 of the Complaint.

## COUNT V
### LG's Infringement of the '123 Patent

LG specifically denies any allegations or characterizations embodied in the headings.

31.     LG admits that U.S. Patent No. 7,191,123 ("the '123 Patent") on its face states an issue date of March 13, 2007 and is entitled "Gain-Smoothing in Wideband Speech and Audio Signal Decoder."  LG denies that the '123 patent was duly and legally issued after a full and fair examination.  LG is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations of Paragraph 31 of the Complaint, and, therefore, denies all such allegations.

32.     LG denies the allegations of Paragraph 32 of the Complaint.

33.     LG denies the allegations of Paragraph 33 of the Complaint.

34.     LG denies the allegations of Paragraph 34 of the Complaint.

## JURY DEMAND

35.     SLC's demand for a trial by jury does not require a response by LG.

## RESPONSE TO SLC'S PRAYER FOR RELIEF

LG denies the underlying allegations of SLC's prayer for relief against LG set forth in Paragraphs 1-34, denies that SLC is entitled to any relief whatsoever, and requests that the Court deny all relief to SLC and enter judgment in favor of LG.

To the extent that any allegations of the Complaint have not been previously specifically admitted or denied, LG denies them.

## AFFIRMATIVE DEFFENSES

LG asserts the following Affirmative Defenses in response to SLC's Complaint and SLC's assertion of infringement of the '805, '524, '802, '521 and '123 Patents (individually and collectively, "the Asserted Patents").  LG reserves its right to amend its Answer to add more Affirmative Defenses, including instances of inequitable conduct, as they become known throughout the course of discovery in this case.  Assertion of a defense is not a concession that LG has the burden of proving the matter asserted.

### FIRST AFFIRMATIVE DEFENSE

36.     LG has not infringed, and does not infringe, either literally or under the doctrine of equivalents, any valid and enforceable claim of the Asserted Patents, whether directly, indirectly, individually, jointly, contributorily, and/or by inducement.

### SECOND AFFIRMATIVE DEFENSE

37.     The claims of the Asserted Patents are invalid and/or unenforceable at least because they fail to satisfy one or more of the conditions or requirements for patentability specified in Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112.

### THIRD AFFIRMATIVE DEFENSE

38.     SLC's claims for relief are statutorily limited in whole or in part by Title 35 of the United States Code, including without limitation, 35 U.S.C. §§ 286 and/or 287.

### FOURTH AFFIRMATIVE DEFENSE

39.     SLC's claims that LG indirectly infringes the Asserted Patents, either contributorily or by inducement, are barred, in whole or in part, because LG is not liable to SLC for the allegedly infringing acts for any time periods during which LG did not know of the Asserted Patents and/or did not have the specific intent to cause infringement of the Asserted Patents and/or otherwise did

not know that its actions would constitute indirect infringement.  In addition, any and all products or actions accused of infringement have substantial uses that do not infringe and do not induce or contribute to the infringement of the claims of the Asserted Patents.

### FIFTH AFFIRMATIVE DEFENSE

40.     SLC's claims are barred, in whole or in part, by an express or implied license, and/or the equitable doctrines of laches, waiver, acquiescence, patent misuse, estoppel and/or the doctrine of patent exhaustion.

### SIXTH AFFIRMATIVE DEFENSE

41.     SLC's claims are barred by the doctrine of prosecution history estoppel based on statements, representations, and admissions made during the prosecution of the patent applications resulting in the Asserted Patents before the United States Patent and Trademark Office and/or during the prosecution of related patent applications.

### SEVENTH AFFIRMATIVE DEFENSE

42.     SLC has failed to state a claim for which relief can be granted.

### EIGHTH AFFIRMATIVE DEFENSE

43.     SLC's Complaint does not, with respect to the named defendants, allege any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, or any common question of law or fact.

### NINTH AFFIRMATIVE DEFENSE

44.     35 U.S.C. § 288 bars SLC from recovering costs associated with this action.

### TENTH AFFIRMATIVE DEFENSE

45.     SLC has alleged that VoiceAge had patent families, including the Asserted Patents that have been allegedly assigned to SLC (Complaint at ¶¶ 15, 19, 23, 27, and 31), which are

essential to certain AMR-WB standards for wideband speech, including ITU-T G.722.2 and 3GPP

TS 26.190.  (Complaint at ¶¶ 8-9.)  SLC has also alleged that "[t]he VoiceAge codec was . . . the

codec chosen to be the official AMR-WB standard."  (Complaint at ¶ 9.)  LG disagrees with, and

denies that the Asserted Patents are standard essential.

46.     To the extent SLC asserts that the Asserted Patents are standard essential, and on

information and belief, then SLC is barred from asserting the Asserted Patents by the equitable

doctrine of patent misuse.

47.     AMR-WB standards are promulgated by relevant standards-setting organizations

("SSOs"), such as the International Telecommunications Union Telecommunication Standardization

Sector ("ITU-T") or the Third Generation Partnership Project ("3GPP").  SSOs put in place

Intellectual Property Rights Policies ("IPR Policies") that require each SSO member to identify all

patents held by any member that may be essential to compliance with a proposed technology

standard.  The IPR Policies further require that each SSO member must state whether it will license

such patents on fair, reasonable and non-discriminatory ("FRAND" or "RAND") terms or without

compensation.

48.     SLC has alleged that "VoiceAge provided the core technologies for at least nine

international speech and audio standards-based codecs used in both wireless and wireline markets

and applications."  (Complaint at ¶ 7.)  SLC has further alleged that "VoiceAge's patented

technologies have won every international audio compression standard to which they have been

submitted during the last thirteen years, including to the Third Generation Partnership Project

("3GPP"), 3GPP2, the International Telecommunications Union ("ITU"), the European

Telecommunications Standards Institute ("ETSI"), and the Motion Picture Experts Group ("MPEG")

of the International Organization for Standardization ("ISO")."  (*Id*.)  On information and belief

based on Paragraph 7 of the Complaint, prior to the institution of this action and during relevant time periods, VoiceAge was a member of various SSOs, including ITU-T, 3GPP, and/or ETSI.  As a member of these SSOs, VoiceAge participated in standards-setting activities within those SSOs.

49.     Prior to the institution of this action, and during relevant time periods, LGE, directly or through one of its affiliates, was a member of various relevant SSOs, including ITU-T, 3GPP, and/or ETSI.

50.     On information and belief, VoiceAge assigned to SLC its rights to the Asserted Patents subject to VoiceAge's obligations to SSOs, including ITU-T, 3GPP, and/or ETSI.

51.     SSOs, like ITU-T, 3GPP, and ETSI, are responsible for the standardization of telecommunication technologies for the benefit of its members and third parties.  SSOs, like ITU-T, 3GPP, and ETSI, have developed IPR Policies designed to mitigate the risk of anticompetitive acts by IPR owners seeking to hold-up or exploit the standard-setting process.   In the absence of FRAND/free licensing obligations, an IPR owner might knowingly watch its patented technology become incorporated into a standard, then demand unreasonable license fees or even refuse to license altogether and seek injunctive relief against any party that implements the standard (and correspondingly, its patented technology).  SSO IPR Policies are designed to obtain FRAND/free licensing obligations from IPR owners to ensure that IPR owners will not use their IPR to extract unreasonable license fees or to exclude any market participant that is willing to accept a license for use of the IPR on FRAND terms and conditions or without compensation to the IPR owner.

52.     By way of example, 3GPP is a collaborative activity through a group of recognized SSOs (its Organizational Partners), including ETSI, and it develops technical specifications subsequently presented to and adopted as standards by its Organizational Partners.  ETSI is a SSO that is responsible for the standardization of information and communication technologies for the

benefit of its members and third parties.  ETSI's IPR Policy is set forth in Annex 6 of its Rules of Procedure.  Clause 4.1 of the ETSI's IPR Policy requires ETSI members to declare all essential IPRs in a timely manner.  Clause 15 of the IPR Policy defines IPR to mean "any intellectual property right conferred by statute law including applications therefor other than trademarks."  Therefore, market participants have a reasonable expectation that all potentially essential patents or patent applications will be disclosed to ETSI.  Clause 6 governs the availability of licenses to essential IPRs, stating that when essential IPRs are brought to the attention of ETSI, ETSI shall immediately request an undertaking in writing that the IPR owner is prepared to grant irrevocable licenses on FRAND terms and conditions.  Clause 8 states that, if an IPR owner notifies ETSI that it is not prepared to license an IPR for a standard, ETSI will select an alternative technology to incorporate into the standard, or will stop working entirely on the standard if no alternative is available.

53.     On information and belief, VoiceAge has explicitly made declarations to SSOs, like ITU-T, 3GPP, and/or ETSI, related to the Asserted Patents, and has undertaken to grant irrevocable licenses under the SSO's IPRs on terms and conditions which are in accordance with the SSO's IPR Policy (i.e., without compensation or on FRAND terms).

54.     On information and belief, because VoiceAge declared the Asserted Patents in accordance with SSO procedures and correspondingly committed to licensing such patents without compensation or on FRAND terms, and because SLC acquired the Asserted Patents subject to VoiceAge's obligations, the equitable doctrine of patent misuse bars SLC's present claims inasmuch as SLC seeks to extract excessive damages from LG.

## ELEVENTH AFFIRMATIVE DEFENSE

55.     LG incorporates the allegations set forth in Paragraphs 45-52, above.  On information and belief, subject to further discovery, and in the alternative, VoiceAge failed to timely disclose the

Asserted Patents to relevant SSOs, including ITU-T, 3GPP, and/or ETSI, in violation of its duties to these SSOs to disclose relevant patents.  This failure to disclose the Asserted Patents is a breach of the duties owed to these SSOs and their members.

56.     As a result, members of these SSOs and others, including LG, have invested financial resources and expended great effort to develop and/or market products that operate in accordance with portions of certain standards established by certain SSOs, such as ITU-T, 3GPP, and/or ETSI.

57.     VoiceAge, and therefore SLC, has waived, or acquiesced with respect to, any rights it may have had to enforce the Asserted Patents against manufacturers, sellers, and/or purchasers, including LG, of products which operate in accordance with portions of certain standards established by certain SSOs, such as ITU-T, 3GPP, and/or ETSI.

## TWELFTH AFFIRMATIVE DEFENSE

58.     SLC has alleged that VoiceAge had patent families, including the Asserted Patents that have been allegedly assigned to SLC (Complaint at ¶¶ 15, 19, 23, 27, and 31), which are essential to certain AMR-WB standards for wideband speech, including ITU-T G.722.2 and 3GPP TS 26.190.  (Complaint at ¶¶ 8-9.)  SLC has also alleged that "[t]he VoiceAge codec was . . . the codec chosen to be the official AMR-WB standard."  (Complaint at ¶ 9.)  LG disagrees with, and denies that the Asserted Patents are standard essential.

59.     To the extent SLC asserts that the Asserted Patents are standard essential, and on information and belief, LG incorporates the allegations set forth in Paragraphs 45-54, above.  In light of these facts, SLC's claims are barred in whole or in part pursuant to actual licenses or under the doctrine of implied license.

60.     In the alternative and on information and belief, LG incorporates the allegations set forth in paragraphs 45-52 and 55-57, above.  In light of these facts, SLC's claims are barred in whole

or in part pursuant to actual licenses or under the doctrine of implied license.

## THIRTEENTH AFFIRMATIVE DEFENSE

61.     SLC has alleged that VoiceAge had patent families, including the Asserted Patents that have been allegedly assigned to SLC (Complaint at ¶¶ 15, 19, 23, 27, and 31), which are essential to certain AMR-WB standards for wideband speech, including ITU-T G.722.2 and 3GPP TS 26.190.  (Complaint at ¶¶ 8-9.)  SLC has also alleged that "[t]he VoiceAge codec was . . . the codec chosen to be the official AMR-WB standard."  (Complaint at ¶ 9.)  LG disagrees with, and denies that the Asserted Patents are standard essential.

62.     To the extent SLC asserts that the Asserted Patents are standard essential, and on information and belief, LG incorporates the allegations set forth in Paragraphs 45-54, above.  In light of these facts, the Asserted Patents are void and unenforceable by reason of the equitable doctrine of unclean hands based, among other things, on VoiceAge's and SLC's failure to comply with the rules and obligations of various SSOs, including ITU-T, 3GPP, and/or ETSI.

63.     In the alternative and on information and belief, LG incorporates the allegations set forth in paragraphs 45-52 and 55-57, above.  In light of these facts, the Asserted Patents are void and unenforceable by reason of the equitable doctrine of unclean hands based, among other things, on VoiceAge's and SLC's failure to comply with the rules and obligations of various SSOs, including ITU-T, 3GPP, and/or ETSI.

## FOURTEENTH AFFIRMATIVE DEFENSE

64.     SLC has alleged that VoiceAge had patent families, including the Asserted Patents that have been allegedly assigned to SLC (Complaint at ¶¶ 15, 19, 23, 27, and 31), which are essential to certain AMR-WB standards for wideband speech, including ITU-T G.722.2 and 3GPP TS 26.190.  (Complaint at ¶¶ 8-9.)  SLC has also alleged that "[t]he VoiceAge codec was . . . the

codec chosen to be the official AMR-WB standard." (Complaint at ¶ 9.) LG disagrees with, and denies that the Asserted Patents are standard essential.

65.     To the extent SLC asserts that the Asserted Patents are standard essential, and on information and belief, LG incorporates the allegations set forth in Paragraphs 45-54, above. In light of these facts, SLC's claims are barred in whole or in part based on equitable and/or promissory estoppel based on VoiceAge's and SLC's failure to comply with promises made to SSOs, including ITU-T, 3GPP, and/or ETSI, and manufacturers of products compliant with the AMR-WB standard.

66.     In the alternative and on information and belief, LG incorporates the allegations set forth in paragraphs 45-52 and 55-57, above. In light of these facts, SLC's claims are barred in whole or in part based on equitable and/or promissory estoppel based on VoiceAge's and SLC's failure to comply with promises made to SSOs, including ITU-T, 3GPP, and/or ETSI, and manufacturers of products compliant with the AMR-WB standard.

## FIFTEENTH AFFIRMATIVE DEFENSE

67.     SLC has alleged that VoiceAge had patent families, including the Asserted Patents that have been allegedly assigned to SLC (Complaint at ¶¶ 15, 19, 23, 27, and 31), which are essential to certain AMR-WB standards for wideband speech, including ITU-T G.722.2 and 3GPP TS 26.190. (Complaint at ¶¶ 8-9.) SLC has also alleged that "[t]he VoiceAge codec was . . . the codec chosen to be the official AMR-WB standard." (Complaint at ¶ 9.) LG disagrees with, and denies that the Asserted Patents are standard essential.

68.     To the extent SLC asserts that the Asserted Patents are standard essential, and on information and belief, LG incorporates the allegations set forth in Paragraphs 45-54, above. In light of these facts, SLC's claims are barred in whole or in part because VoiceAge, and thus SLC, knowingly waived its right to seek monetary damages and/or non-FRAND monetary damages

through the commitments made to SSOs, including ITU-T, 3GPP, and/or ETSI.

69.     In the alternative and on information and belief, LG incorporates the allegations set forth in paragraphs 45-52 and 55-57, above.  In light of these facts, SLC's claims are barred in whole or in part because VoiceAge, and thus SLC, knowingly waived its right to seek monetary damages and/or non-FRAND monetary damages through the commitments made to SSOs, including ITU-T, 3GPP, and/or ETSI.

## SIXTEENTH AFFIRMATIVE DEFENSE

70.     SLC's claims are barred in whole or in part by laches, waiver and/or estoppel.

71.     On information and belief, SLC and the alleged assignors of the Asserted Patents (including VoiceAge) have been aware for many years that LG and others were developing, manufacturing, marketing and/or selling products that operate in accordance with certain portions of certain relevant AMR-WB standards.

72.     SLC and the alleged assignors of the Asserted Patents (including VoiceAge) have inexcusably and unreasonably delayed in bringing a patent infringement action against LG.  Their delay has economically and/or evidentially resulted in material prejudice to LG.

## SEVENTEENTH AFFIRMATIVE DEFENSE

73.     SLC has alleged that VoiceAge had patent families, including the Asserted Patents that have been allegedly assigned to SLC (Complaint at ¶¶ 15, 19, 23, 27, and 31), which are essential to certain AMR-WB standards for wideband speech, including ITU-T G.722.2 and 3GPP TS 26.190.  (Complaint at ¶¶ 8-9.)  SLC has also alleged that "[t]he VoiceAge codec was . . . the codec chosen to be the official AMR-WB standard."  (Complaint at ¶ 9.)  LG disagrees with, and denies that the Asserted Patents are standard essential.

74.     To the extent that SLC asserts that the Asserted Patents are standard essential and on

information and belief, LG incorporates the allegations set forth in paragraphs 45-54, above.  In light of these facts, SLC lacks standing as to its claims relating to some or all of the Asserted Patents because it has not offered LG a license without compensation or on FRAND terms or negotiated in good faith to offer LG such a FRAND/free license in violation of VoiceAge's representations and obligations to SSOs, including ITU-T, 3GPP, and/or ETSI.

## EIGHTEENTH AFFIRMATIVE DEFENSE

75.      SLC's remedies are limited by 28 U.S.C. § 1498(a).

## NINETEENTH AFFIRMATIVE DEFENSE

76.      SLC lacks standing to pursue some or all of its claims against LG.

77.      On information and belief, the Université de Sherbrooke filed Canadian Patent Application No. 2252170 ("the '170 application") on October 27, 1998 and identified itself as the owner of the invention.  Each of the asserted '805, '524, '802, and '521 patents on its face states that it claims priority to the '170 application.  On information and belief, subject to further discovery, the Université de Sherbrooke owns some or all rights in at least the asserted '805, '524, '802, and '521 patents.  As a result, SLC does not own all of the rights in at least the '805, '524, '802, and '521 patents, and therefore lacks standing to pursue its claims for infringement of those patents.

## TWENTIETH AFFIRMATIVE DEFENSE

78.      LG incorporates the allegations set forth in Paragraph 77, above.  On information and belief, subject to further discovery, and in the alternative, SLC's claims are barred in whole or in part because it has failed to name all necessary parties to this action.

## LG'S COUNTERCLAIMS FOR DECLARATORY RELIEF

LG, for its counterclaims against SLC, states and alleges as follows:

## NATURE OF THE ACTION

1.      These counterclaims seek declaratory judgment respecting the patents asserted by SLC in this action.  LG seeks judgment under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

## PARTIES

2.      LG Electronics, Inc. ("LGE") is a Korean entity having its principal place of business at LG Twin Towers 20, Yeouido-dong, Yeongdeungpo-gu, Seoul 150-721, South Korea.  LG Electronics Alabama, Inc. ("LGEAI") is an Alabama corporation having its principal place of business at 201 James Record Road, Huntsville, Alabama 35824.  LG Electronics U.S.A., Inc. ("LGEUS") is a Delaware corporation having its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.  LGE, LGEAI and LGEUS are collectively referred to herein as "LG."

3.      On information and belief based on Paragraph 1 of the Complaint as pled by SLC, SLC is a Texas limited liability company having its principal place of business at 2400 Dallas Parkway, Suite 200, Plano, Texas 75093.

4.      This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201-02.

5.      SLC has consented to the personal jurisdiction of this Court at least by commencing its action for patent infringement in this District, as set forth in its Complaint.

6.      By virtue of its filing this action, SLC has also consented that venue is permissible in this District pursuant to at least 28 U.S.C. §§ 1391(c) and 1400.  By asserting these counterclaims,

LG does not waive, and instead expressly preserves, its objection to venue with respect to SLC's Complaint in this action. *See Rates Tech., Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1307-08 (Fed. Cir. 2005).

7.      SLC, based on averments in its Complaint, claims to be the present assignee of U.S. Patent Nos. 6,795,805 ("the '805 Patent"), 6,807,524 ("the '524 Patent"), 7,151,802 ("the '802 Patent"), 7,260,521 ("the '521 Patent") and 7,191,123 ("the '123 Patent") (individually and collectively, "the Asserted Patents") and claims to hold the right to pursue and collect damages for past and present infringement thereof.  SLC also claims that LG has infringed the Asserted Patents. On information and belief, SLC has never made any product or system, or otherwise practiced, any claim of the Asserted Patents.

## COUNTERCLAIM COUNT I
### DECLARATORY JUDGMENT OF NON-INFRINGEMENT

8.      LG incorporates by reference the allegations of Paragraphs 1-7 of its Counterclaims.

9.      Based on SLC's filing of this action and at least LG's First, Second and Fourth Affirmative Defenses, an actual controversy has arisen and now exists between the parties as to whether or not LG has infringed the Asserted Patents.

10.     LG has not and is not now infringing any claim of the Asserted Patents under any theory, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).

11.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, LG requests a declaration by the Court that LG has not infringed, and does not infringe, any valid and enforceable claim of the Asserted Patents, whether directly, indirectly, individually, jointly, contributorily, and/or by inducement.  LG does not have an adequate remedy at law.

## COUNTERCLAIM COUNT II
## DECLARATORY JUDGMENT OF INVALIDITY

12.     LG incorporates by reference the allegations of Paragraphs 1-11 of its Counterclaims.

13.     Based on SLC's filing of this action and at least LG's Second Affirmative Defense, an actual controversy has arisen and now exists between the parties as to the validity of the claims of the Asserted Patents.

14.     The asserted claims of the Asserted Patents are invalid because the alleged inventions fail to satisfy the conditions for patentability specified in 35 U.S.C. § 100 *et seq*., including §§ 101, 102, 103, and/or 112.

15.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and Title 35 of the United States Code, LG requests a declaration by the Court that the Asserted Patents are invalid for failing to satisfy the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including, without limitation, §§ 101, 102, 103, and/or 112.  LG does not have an adequate remedy at law.

## COUNTERCLAIM COUNT III
## DECLARATION OF FRAND ROYALTIES

16.     LG incorporates the allegations set forth in Paragraphs 1-15 of its Counterclaims, and Paragraphs 45-54 of its Answer to the Complaint.

17.     SLC is obligated to license the Asserted Patents on FRAND terms.

18.     Despite SLC's obligations to license the Asserted Patents on FRAND terms, SLC has taken the position that LGE should pay SLC exorbitant royalties for each end product (*e.g.*, mobile phone) that complies with the AMR-WB standard, such as those shown in the table below from SLC's website.

| Saint Lawrence Communications GmbH License Fees Rate Table Summary | | | | | | |
|---|---|---|---|---|---|---|
| Category 1 - Pricing / Individual Consumer Device (excludes Wi-Fi handsets and devices) | | Decoder | | Encoder | | Codec |
| | | $ 0.20 | $ 0.20 | | | $ 0.20 |
| Category 2 - Professional Content Creation Tools / Applications | | Decoder | | Encoder | | Codec |
| | | $ 13.00 | $ 13.00 | | | $ 26.00 |
| Category 3a - Downloaded Content Applications / Download | | Decoder | | Encoder | | Codec |
| | | $ 0.13 | $ 0.13 | | | $ 0.13 |
| Category 3b - Downloaded VoIP Applications / Download | | Decoder | | Encoder | | Codec |
| | | $ 0.13 | $ 0.33 | | | $ 0.33 |
| Category 4 - Telecom and Multimedia Infrastructure / Unit | | Decoder | | Encoder | | Codec |
| | | $ 0.40 | $ 0.40 | | | $ 0.40 |
| Category 5 - Licensed Products Enabling 3rd Party Applications / Individual Consumer Devices | | Decoder | | Encoder | | Codec |
| | Flat Rate | $ 0.27 | | n/a | | $ 0.40 |
| Category 6 - Wireless Devices and Handsets | | *2 fee options, refer to chart below | | | | |
| Option 1: Non-Prepaid Pricing / Licensed Product | Cumulative Volume | Decoder | | Encoder | | Codec |
| | 1 to 10,000,000 | $ 0.43 | $ 0.60 | | | $ 0.60 |
| | 10,000,001 to 60,000,000 | $ 0.37 | $ 0.50 | | | $ 0.50 |
| | 60,000,001 + | $ 0.30 | $ 0.40 | | | $ 0.40 |
| Option 2: Prepaid Pricing / Licensed Product | Prepaid Volume | Codec | | | | |
| | 10,000,000 | $ | | | | 0.55 |
| | 60,000,000 | $ | | | | 0.45 |
| | 100,000,000 | $ | | | | 0.40 |

http://web.saintlawrencegmbh.com/licensing.html (last visited Apr. 27, 2015).

19.   The law and SLC's contractual obligations require that royalties for the Asserted Patents be set using as the royalty base (at most) the smallest saleable unit that substantially embodies the patented technology, and then applying a reasonable royalty rate to that base.  For the Asserted Patents, based on SLC's allegations, that royalty base would be (at most) the baseband processor chip if it performs AMR-WB processing functions used for HD Voice.

20.   On information and belief, the AMR-WB royalties sought by SLC are unfair, unreasonable, and discriminatory, and therefore in violation of SLC's FRAND obligations for the Asserted Patents.

21.   As a result of the acts described in the foregoing paragraphs, an actual controversy has arisen and now exists between the parties as to the proper amount of a FRAND royalty.

22.   A judicial declaration is necessary and appropriate so that LG may ascertain its rights regarding a royalty for each of the Asserted Patents.

23.     To the extent that any of the Asserted Patents is determined to be essential to the AMR-WB standard, infringed by LG, and not invalid, then SLC must (a) select as a royalty base, at most, the smallest saleable unit substantially embodying the patent, and (b) apply to that royalty base a reasonable royalty rate that reflects the actual technical contribution to the standard that is attributable to the patent.  As an alternative to its requests for declarations of non-infringement and invalidity, LG is entitled to a judicial declaration that sets a FRAND royalty in this manner for any Asserted Patent found to be infringed and not invalid.

### COUNTERCLAIM COUNT IV
### BREACH OF CONTRACT

24.     LG incorporates the allegations set forth in Paragraphs 1-23 of its Counterclaims, and Paragraphs 45-54 of its Answer to the Complaint.

25.     SLC has alleged that VoiceAge Corporation ("VoiceAge") had patent families, including the Asserted Patents that have been allegedly assigned to SLC (Complaint at ¶¶ 15, 19, 23, 27, and 31), which are essential to certain AMR-WB standards for wideband speech, including ITU-T G.722.2 and 3GPP TS 26.190.  (Complaint at ¶¶ 8-9.)  SLC has also alleged that "[t]he VoiceAge codec was . . . the codec chosen to be the official AMR-WB standard."  (Complaint at ¶ 9.)  LG disagrees with, and denies that the Asserted Patents are standard essential.

26.     To the extent SLC asserts that the Asserted Patents are standard essential, and on information and belief, then by committing to license without compensation or on FRAND terms the Asserted Patents, VoiceAge, and thus SLC, entered into contractual commitments with the relevant SSOs, including ITU-T, 3GPP, and/or ETSI.  Parties implementing the AMR-WB standards are intended third party beneficiaries of these contractual commitments and are entitled to enforce benefits of those contractual commitments.

27.     In willful disregard of SLC's contractual obligations to license the Asserted Patents

without compensation or on FRAND terms, SLC has refused to extend to LG a license to the Asserted Patents under fair and reasonable rates and terms and on a non-discriminatory basis. Instead, SLC is demanding royalty payments that are wholly disproportionate to the royalty rate that its patents should command under any reasonable calculus.  In addition, SLC, through its foreign counterpart, filed suit in Germany on German counterparts of the Asserted Patents without first offering LG a license on FRAND terms, and is seeking an injunction against LG products.

28.     SLC's actions and demands constitute a breach of its contractual obligations to SSOs, including ITU-T, 3GPP, and/or ETSI.

29.     As a result of these contractual breaches, LG has been injured, including in its business or property.  LG has also been forced to expend resources resolving this licensing dispute and has suffered or faces the threat of, for example, increased costs, loss of profits, loss of customers and potential customers, loss of goodwill and product image, uncertainty in business planning, and uncertainty among customers and potential customers.

30.     LG will suffer irreparable injury by reason of the acts, practices, and conduct of SLC alleged above until and unless the Court enjoins such acts, practices, and conduct.

31.     For at least the reasons detailed in the prior paragraphs, LG is entitled at least to an order compelling specific performance of SLC's obligations to the SSOs, including ITU-T, 3GPP, and/or ETSI.  For avoidance of doubt, LG is not seeking any monetary damages on account of SLC's breach of its obligation to the SSOs.

## COUNTERCLAIM COUNT V
## PROMISSORY ESTOPPEL

32.     LG incorporates the allegations set forth in Paragraphs 1-31 of its Counterclaims, and Paragraphs 45-54 of its Answer to the Complaint.

33.     SLC has alleged that VoiceAge Corporation ("VoiceAge") had patent families,

including the Asserted Patents that have been allegedly assigned to SLC (Complaint at ¶¶ 15, 19, 23, 27, and 31), which are essential to certain AMR-WB standards for wideband speech, including ITU-T G.722.2 and 3GPP TS 26.190.  (Complaint at ¶¶ 8-9.)  SLC has also alleged that "[t]he VoiceAge codec was . . . the codec chosen to be the official AMR-WB standard."  (Complaint at ¶ 9.)  LG disagrees with, and denies that the Asserted Patents are standard essential.

34.     To the extent SLC asserts that the Asserted Patents are standard essential, and on information and belief, then by committing to license without compensation or on FRAND terms the Asserted patents, VoiceAge, and thus SLC, made clear and definite promises to potential licensees through its commitments to the relevant SSOs, including ITU-T, 3GPP, and/or ETSI, that it would license patents deemed essential to the standards without compensation or on FRAND terms.

35.     It was foreseeable to VoiceAge, and thus SLC, that LG would rely on this promise to license without compensation or on FRAND terms.  The intended purpose of VoiceAge's promises was to induce reliance.  It knew or should have reasonably expected that those promises would induce others to implement the AMD-WB standard.

36.     LG developed and marketed its products and services in reliance on these promises, as described above, including making its products and services compliant with the AMR-WB standard.

37.     Thus, SLC is estopped from breaking its promise to license the patents it has declared as essential to LG without compensation or on FRAND terms by the doctrine of promissory estoppel.

38.     LG has been harmed as a result of its foreseeable and reasonable reliance on VoiceAge's promises.  LG has been forced to expend resources resolving this licensing dispute, and is threatened by, for example, increased costs, loss of profits, loss of customers and potential

customers, loss of goodwill and product image, uncertainty in business planning, and uncertainty among customers and potential customers.

## PRAYER FOR RELIEF

WHEREFORE, LG respectfully request that this Court enter judgment in LG's favor against SLC and issue an order that includes:

A.     A declaration that LG has not infringed, and does not infringe, either directly, indirectly, or otherwise, any valid and enforceable claim of the Asserted Patents;

B.     A declaration that the claims of the Asserted Patents are invalid;

C.     As an alternative, for any of the Asserted Patents found to be actually essential to the AMR-WB standard, infringed by LG, and not invalid, a declaration of a FRAND royalty that (a) uses a royalty base of (at most) the smallest saleable unit substantially embodying the claimed invention and (b) sets a reasonable rate applied to that royalty base that reflects the actual technical contribution to the standard that is attributable to the patent;

D.     A declaration that SLC is liable for breach of contract.

E.     A declaration that SLC is liable for promissory estoppel.

F.     An injunction preventing SLC from further demanding excessive royalties from LG or from taking any other actions that are not consistent with SLC's FRAND obligations.

G.     Judgment against SLC and in favor of LG;

H.     A declaration that SLC take nothing by its Complaint;

I.     Dismissal of SLC's Complaint with prejudice;

J.     A declaration that this case is exceptional and an award to LG of its costs, expenses, and reasonable attorneys' fees incurred in this action; and

K.     Further relief as the Court may deem just and proper.

## JURY DEMAND

LG hereby demands a trial by jury for all issues so triable.


Dated:  April 27, 2015                          Respectfully submitted,


                                                By:  */s/ Melissa R. Smith*
                                                     Melissa R. Smith
                                                     SBN 24001351
                                                     Gillam & Smith LLP
                                                     303 South Washington Avenue
                                                     Marshall, Texas 75670
                                                     Telephone: 903-934-8450
                                                     Fax: 903-934-9257
                                                     melissa@gillamsmithlaw.com

                                                     Michael J. McKeon
                                                     D.C. Bar No. 459780
                                                     mckeon@fr.com
                                                     Scott A. Elengold (Pro Hac Vice)
                                                     D.C. Bar No. 976559
                                                     elengold@fr.com
                                                     R. Andrew Schwentker
                                                     D.C. Bar. No. 991792
                                                     schwentker@fr.com
                                                     FISH & RICHARDSON P.C.
                                                     1425 K Street, N.W., Suite 1100
                                                     Washington, D.C.  20005
                                                     Telephone: (202) 783-5070
                                                     Facsimile: (202) 783-2331

                                                     *Attorneys for Defendants*
                                                     *LG ELECTRONICS, INC., LG ELECTRONICS*
                                                     *ALABAMA, INC. and LG ELECTRONICS*
                                                     *U.S.A., INC.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on 27th day of April, 2015, per Local Rule CV-5(a)(3).

*/s/ Melissa R. Smith*
Melissa R. Smith