IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SAINT LAWRENCE COMMUNICATIONS LLC, | § § § | |
| *Plaintiff,* | § § | |
| | § | CASE NO. 2:14-cv-1055-JRG |
| v. | § § | |
| LG ELECTRONICS, INC., LG ELECTRONICS ALABAMA, INC., LG ELECTRONICS USA, INC., AND LG ELECTRONICS MOBILECOMM, U.S.A., INC. | § § § § § | |
| *Defendants.* | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants LG Electronics, Inc. ("LGE"), LG Electronics Alabama, Inc. ("LGEAI"), and LG Electronics U.S.A., Inc.'s ("LGEUS") (collectively, "LG") Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) ("Mot.", Dkt. No. 38). For the reasons set forth below, the Motion to Transfer is **DENIED**.

## BACKGROUND

In its complaint filed on November 18, 2014, Plaintiff Saint Lawrence Communications LLC ("SLC") asserts that LG infringes five patents relating to a type of speech technology known as HD Voice. (Dkt. No. 1.) SLC alleges that various LG mobile phones contain HD Voice and thus infringe this patented technology. (*Id.*)

The LG defendants are based in South Korea (LGE), New Jersey (LGEUS), and Alabama (LGEAI) and seek to transfer the case to the Central District of California under 28 U.S.C. § 1404(a). (Mot. at 1–2.) LG alleges that the proposed venue is clearly more convenient because key witnesses and evidence are located in the Central District of California or within its absolute

1

subpoena power. (*Id.* at 1.) SLC is based in the Eastern District of Texas in Plano, Texas. ("Key Decl.", Dkt. No. 50-10 ¶ 2.) SLC argues that key witnesses and evidence are located in Texas. ("Resp.", Dkt. No. 50 at 1–2.)

## LEGAL STANDARD

"[A] district court may transfer any civil action to any other district or division where it might have been brought" for the convenience of parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a). Thus, the first inquiry when analyzing a transfer under section 1404(a) is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) (hereinafter *In re Volkswagen I*).

Once that threshold inquiry is met, the district court must then consider the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1197–98 (Fed. Cir. 2009). The party seeking transfer must show good cause, which means that the moving party must demonstrate that the proposed transferee venue is "clearly more convenient than the venue chosen by the plaintiff[.]" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (hereinafter *In re Volkswagen II*). A convenience determination consists of balancing the convenience and inconvenience resulting from plaintiff's choice of venue in comparison with those of the proposed venue. This balancing includes examining several private and public interest factors, none of which has dispositive weight. *Id.* The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of

attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen II*, 545 F.3d at 314–15 & n.10. Rather, the weight to be afforded to the plaintiff's choice of venue is reflected in the moving party's substantial burden of proving that the proposed venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 315.

## ANALYSIS

### A. Proper Venue

The Parties do not dispute that both the Eastern District of Texas and the Central District of California are proper venues for this case.

### B. Private Interest Factors

The Parties both agree that non-party Qualcomm Technologies, Inc. ("Qualcomm") will have evidence relevant to this case. (Mot. at 6; Resp. at 3.) SLC asserts that the Qualcomm Snapdragon processors used in various accused LG products implement the patented technology.

(Resp. at 3.) Additionally, SLC claims that three other third parties have documents and witnesses relevant to this case: MediaTek, Inc. ("MediaTek"), NVIDIA Corp. ("NVIDIA"), and Texas Instruments Inc. ("Texas Instruments"). (*Id.* at 5.) SLC asserts that, like Qualcomm, all three parties manufacture chips for use in the accused LG products and possess evidence that relates to SLC's claims of infringement. (*Id.*)[1]

**1. Relative Ease of Access to Sources of Proof**

The first of the private interest factors to be considered is the relative ease of access to sources of proof. Despite technological advances that undoubtedly lighten the relative inconvenience of transporting large amounts of (digitized as opposed to hard-copies of) documents across the country, this factor must still be considered in the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous.").

This factor will turn upon which party—usually the accused infringer—will most probably have the greater volume of documents relevant to the litigation and the presumed location of these documents in relation to the proposed and transferor venues. *See, e.g., In re Nintendo*, 589 F.3d at 1199; *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

LG argues that this factor favors transfer because a large part of evidence relevant to infringement will come from Qualcomm's San Diego headquarters where "Qualcomm's technical documents and source code for the relevant Qualcomm processors are located." (Mot. at 6.) Additionally, LG claims that documents relating to the accused products are located in San

---

[1] LG disputes the relevance of MediaTek and NVIDIA because "SLC has not accused a single LG product sold in the US that includes an accused MediaTek or NVIDIA chip." ("Reply", Dkt. No. 54 at 3.) LG also contends that Texas Instrument's relevance "pales in comparison to Qualcomm." (*Id.* at 4.) However, as SLC states in its Sur-Reply, SLC's infringement contentions identify LG products containing Texas Instruments, MediaTek, and NVIDIA microchips. ("Sur-Reply", Dkt. No. 58 at 4–5; "Amended Infringement Contentions," Dkt. No. 50-8 at 2.)

Diego because two of LG's subsidiaries, LG Electronics MobileComm, U.S.A., Inc. ("LGEMU")[2] and LG Electronics Mobile Research U.S.A., LLC ("LGEMR"), have teams in San Diego that work closely with Qualcomm engineers on issues related to the Snapdragon processors. (*Id.* at 4.) However, the Court notes that the San Diego locations relevant to this case are located in the Southern District of California and not the Central District of California. (Resp. at 1.) Further, LG argues that Acacia Research Corporation ("Acacia") may possess relevant documents at its Newport Beach headquarters, as SLC is a wholly owned subsidiary of Acacia. (*Id.* at 2, 12.)

SLC argues that "the engineers 'responsible for creating Qualcomm's next-generation, world-class Snapdragon processers' are located at design centers in Raleigh, North Carolina, and Austin, Texas—not San Diego." (Resp. at 3.) Accordingly, SLC asserts that documents relating to the design and operation of Qualcomm's Snapdragon processors will likely come from Raleigh and Austin, rather than from San Diego. (*Id.* at 4.) Further, SLC argues that additional technical information will likely come from MediaTek's design center in Austin, NVIDIA's design center in Austin, and Texas Instruments' headquarters and engineering centers in Dallas. (*Id.* at 5.) SLC also contends that LGEMU's operations are based in New Jersey, Washington D.C., and South Korea, and, as a result, LG's relevant financial, marketing, and technical documents will come from those locations. (*Id.* at 5–6.) Additionally, SLC emphasizes that its own documents and evidence are located in the Eastern District of Texas. SLC is headquartered in Plano. (Key Decl. ¶ 9; Resp. at 1.) SLC's parent company, Acacia Research Group LLC ("ARG"), or its predecessors have maintained offices in the Eastern District since October 2010. (Key Decl. ¶ 4.) ARG has ongoing operations, offices, and employees in Plano, Texas. (Key

---

[2] After the current Motion to Transfer was filed and briefed, SLC sought leave to add LGEMU as a defendant in this case. *See* (Dkt. No. 63.) However, the Parties stipulated that LGEMU should continue to be considered "a relevant third party" for purposes of this Motion. (Dkt. No. 61 at 1.)

Decl. ¶¶ 5–6.)

While LG argues that its subsidiaries have relevant documents outside of the Central District of California but in San Diego, evidence suggests that technical and financial documents relating to the accused products are also located in South Korea and New Jersey.[3] Similarly, LG has not met its burden to show that Qualcomm's evidence is clearly more accessible from San Diego. Instead, LG has only shown that Qualcomm's documents are in both Raleigh and San Diego. *See* ("Klement Decl.", Dkt. No. 38-20 ¶ 5 ("Qualcomm's technical document and source code management systems for the accused Qualcomm Snapdragon chip products are primarily based in San Diego, California and Raleigh, North Carolina.").) As to the other third parties, SLC has shown that MediaTek, NVIDIA, and Texas Instruments have potential evidence that is more accessible from Texas than California. *See* (Dkt. No. 54 at 3–4.) Finally, SLC has demonstrated that it possesses relevant evidence in the Eastern District. Although LG asserts that SLC and ARG are both subsidiaries of Acacia, such an assertion does not rebut SLC's showing that its evidence is located within this District. Considering the location of documents in relation to the proposed and transferor venues, LG has not shown that this factor weighs in favor of transfer. The Court finds that this factor is neutral.

**2. Availability of Compulsory Process to Secure the Attendance of Witnesses**

The Court may command a person who "resides, is employed, or regularly transacts business in person" in Texas to attend trial in Marshall if he or she "would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). The Court also may command a person to attend a deposition at a location "within 100 miles of where the person resides, is employed, or regularly

---

[3] LG's corporate representative, Kate Oliver, testified that source code for the accused products, as well as engineering and technical documents related to the accused products, are stored on a server in South Korea. ("Oliver Dep.", Dkt. No. 50-9 at 33:11–24.) Ms. Oliver also testified that financial documents related to the accused products are located in South Korea and New Jersey, while marketing documents are likely located in New Jersey. (Oliver Dep. at 34:6–14, 45:16–23.)

transacts business in person." Fed. R. Civ. P. 45 (a)(2); *see id.* (c)(1)(A), (d)(3)(a). Party witnesses normally do not require compulsory process.

LG asserts that the Central District of California has absolute subpoena power over Qualcomm employees in San Diego and Acacia employees in Newport Beach. (Mot. at 10–11.) In response, SLC "identified over fifteen Qualcomm employees that live and work in the Austin area with relevant knowledge of the design and operation of the particular Qualcomm chips at issue in this case." (Resp. at 7.) The employees identified by SLC include Qualcomm's Vice President of Engineering, Qualcomm's Senior Director of Technology, and various senior engineers. (*Id.* at 8.) LG counters by pointing to statements made by Mr. Reiner Klement[4], a Qualcomm executive, that the Qualcomm witnesses with the most relevant knowledge for this case are based in San Diego. (Klement Decl. ¶ 6.) However, Mr. Klement does acknowledge that relevant US-based engineering teams are also located in Raleigh. (Klement Decl. ¶ 6 ("Most of the US-based engineering teams who design or develop the ARM-based processors used in the Snapdragon chip products are either located in California or Raleigh, North Carolina.").) Additionally, SLC argues that the Eastern District has subpoena power over MediaTek employees and specifically identifies various MediaTek engineers and technical staff as potential witnesses. (Resp. at 8–9.)

The Central District of California has subpoena power over any Qualcomm witnesses based in San Diego, as well as any Acacia witnesses based in Newport Beach. The Eastern District has subpoena power over any Qualcomm or MediaTek witnesses based in Austin. Neither District has subpoena power over any Qualcomm witnesses in Raleigh, and Mr. Klement's statements suggest that it is equally likely that the relevant Qualcomm technical

---

[4] Mr. Klement is Vice President of Product Management at Qualcomm. (Klement Decl. ¶ 1.) He is responsible for managing Qualcomm's portfolio of Snapdragon chip products. (*Id.*)

7

witnesses will be located in California or in North Carolina. Considering the locations of witnesses, including potential third party witnesses, LG has not proven that this factor clearly favors transfer. The Court finds that this factor is neutral.

### 3. Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d at 1342. In assessing this factor, the Court considers the convenience of both party and non-party witnesses. The convenience of non-party witnesses carries the greater weight in the analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990); *see also* 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3851 (3d ed. 2012). "A district court should [also] assess the relevance and materiality of the information the witness may provide" but should not require the movant to show "that the potential witness has more than relevant and material information . . . ." *In re Genentech*, 566 at 1343–44.

The Fifth Circuit has adopted a "100-mile rule" to focus the analysis of this factor. *See In re Volkswagen I*, 371 F.3d at 204–05. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* When applying the 100-mile rule, the threshold question is whether the transferor and proposed venues are more than 100 miles apart. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. If so, then a court determines the respective distances between the residences (or workplaces) of the identified material and relevant witnesses and the transferor and proposed venues. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. The 100-mile rule generally favors transfer (with differing degrees) if the proposed venue is a shorter average

8

distance from the witnesses than the transferor venue. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320.

LG contends that this factor favors transfer because "the cost of attendance for any Qualcomm or Acacia employees in California will be less for a trial in the Central District of California than in the Eastern District of Texas." (Mot. at 12.) LG also argues that the proposed venue would be much more convenient for relevant LGEMU witnesses in San Diego, as travel from San Diego to Marshall "would require a trip of over 1000 miles further than the distance to the Central District of California." (*Id.*)

SLC claims that the "vast majority of the potential witnesses in this case are based either in Texas or New Jersey, including LG's own witnesses." (Resp. at 9.) SLC asserts that its main witnesses reside in Texas, including SLC Director and CEO Marvin Key and SLC Director and Vice President Holly Hernandez. (*Id.* at 10.)

The Court finds that this factor weighs against transfer.[5] SLC has identified willing witnesses in Texas, one of whom will appear as SLC's corporate representative. (Key Decl. ¶ 7.) LG has not specifically identified a willing witness in California. LG points to LGEMU as potentially providing willing witnesses located in San Diego.[6] However, undisputed evidence shows that potential LGEMU witnesses are also located on the East Coast. For example,

---

[5] The Court does not consider Qualcomm witnesses under this factor, as such potential witnesses have been identified as unwilling witnesses. LG analyzed potential Qualcomm witnesses as those being within the absolute subpoena power of the Central District of California. (Mot. at 6–7, 10.) In fact, Mr. Klement stated, on behalf of Qualcomm, that "none of us could commit to appearing voluntarily in Marshall, Texas, as witnesses in these proceedings unless required by compulsory legal process." (Klement Decl. ¶ 7.) Thus, it is unclear whether Qualcomm would provide willing witnesses in California.

[6] It is unclear as to whether any such witnesses would be willing. Similarly to Mr. Klement, Mr. Michael Henson, Senior Director of Quality Management for LGEMU stated on behalf of LGEMU that "none of us could commit to appearing voluntarily in Marshall, Texas, as witnesses in these proceedings unless required by compulsory legal process." ("Henson Decl.", Dkt. No. 38-15 ¶ 15.) Again, it is unclear whether LGEMU would provide willing witnesses in California. While the opportunity to address their willingness to appear in the Central District of California was clearly open and available, neither Mr. Klement nor Mr. Henson made any such representation. Willingness to appear in one venue cannot be implied simply from a statement of unwillingness to appear as to another venue.

LGEMU's head of marketing for the accused products, Chang Ma, is located in New Jersey, LGEMU's CFO, Casey Ko, is located in New Jersey, and LGEMU's legal department, which handles patent licensing and litigation, is located in Washington D.C. (Oliver Dep. at 17:19–18:16, 48:7–23, 43:24–44:11.) Moreover, LG's corporate representative, Kate Oliver, stated that employees of the LG entities with technical knowledge of the accused products are located in Korea. (Oliver Dep. at 14:20–15:24.) When pressed about the technical knowledge of LG's teams in San Diego, Ms. Oliver testified that those employees "liaison" with Qualcomm regarding LG's products and Qualcomm's chips. (Oliver Dep. at 54:18–55:21.) Ms. Oliver further testified that she could not identify individual employees on the San Diego teams with technical knowledge of the Qualcomm chips. (Oliver Dep. at 38:23–39:9.) Considering the locations of willing witnesses, the Court finds this important factor disfavors transfer.

### 4. Other Practical Problems

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor of or against transfer. *See In re Volkswagen*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (hereinafter *In re Volkswagen III*).

At the time LG filed this Motion, similar cases were pending in both the Central District of California[7] and the Eastern District of Texas. (Mot. at 13–14.) SLC argues that a transfer would be disruptive. (Resp. at 11.) The Court finds that this factor is neutral.

## C. Public Interest Factors

### 1. Administrative Difficulties Flowing from Court Congestion

The speed with which a case can come to trial and be resolved is a factor in the transfer

---

[7] The Central District of California transferred *HTC Corp. v. Acacia Research Corp.*, No. 8:15-cv-378 (C.D. Cal., filed Mar. 9, 2015) to the Eastern District of Texas on September 11, 2015. *See HTC Corp. v. Acacia Research Corp.*, No. 2:15-cv-1510, Dkt. Nos. 34, 36.

analysis. *In re Genentech*, 566 F.3d at 1347. This factor appears to be the most speculative and, on its own, should not outweigh other factors. *Id*.

LG argues that this factor is neutral because the Central District of California has only a slightly faster median length of time to trial: 19.9 months versus 21.9 months. (Mot. at 15.) SLC responds by asserting that patent cases have a much faster time to trial in the Eastern District of Texas. (Resp. at 14.) SLC asserts that the time to trial for patent cases in the Eastern District of Texas is two years and 284 days for 75% of cases, whereas the time to trial for patent cases in the Central District of California over the last five years has been three years and 196 days for 73.3% of cases. (*Id.*)

The Court finds that this factor is essentially neutral. While patent cases tend to proceed to trial faster in the Eastern District of Texas, the Federal Circuit has noted that this factor is mostly speculative, limiting its impact on the transfer analysis. *See In re Genentech*, 566 F.3d at 1347.

**2. Local Interest in Having Localized Interests Decided at Home**

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947); *In re Volkswagen I*, 371 F.3d at 206. This factor analyzes the "factual connection" that a case has with both the proposed and transferor venues. *See In re Volkswagen I*, 371 F.3d at 206.

LG argues that this factor favors transfer because SLC's allegations of patent infringement call into question the work of both Qualcomm's and LGEMU's employees in San Diego. (Mot. at 14.) LG also asserts that Acacia is the entity that would benefit most from any damages awarded to SLC in this case. (*Id.*) In response, SLC argues that its infringement claims

"do not 'call into question' the reputations of Qualcomm and LGEMU," as SLC has made no claims against either entity.[8] (Resp. at 13.) SLC further argues that LG is being "disingenuous" by continuously attacking SLC's subsidiary status while advocating for a transfer based upon the locations of LG's own subsidiaries. (*Id.*)

The Court finds that this factor weighs against transfer. SLC is headquartered in Plano, Texas, and the only party identified in the Central District of California is Acacia—SLC's parent company. As noted above, San Diego is not within the Central District of California.

### 3. Familiarity of the Forum with the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflicts of Laws

The parties agree that the remaining public interest factors are neutral. (Mot. at 15; Resp. at 15.)

### D. The Balance of Factors Weighs Against Transfer

After weighing all of the evidence, the Court finds that this case should remain in the Eastern District of Texas. A motion to transfer venue should only be granted if the moving party can show that the transferee venue is "clearly more convenient" than the transferor venue. *In re Nintendo*, 589 F.3d at 1197; *In re Genentech*, 566 F.3d at 1342. Two factors weigh against transfer, while the remaining six factors are neutral. LG bears the burden of proving that the Central District of California is *clearly* more convenient than the Eastern District of Texas. LG has failed to meet that burden.

## CONCLUSION

For the reasons set forth above, LG's Motion to Transfer to the Central District of California (Dkt. No. 38) is **DENIED**.

---

[8] As noted above, the Parties have agreed to consider LGEMU "a relevant third party" for purposes of this Motion.

**So ORDERED and SIGNED this 3rd day of December, 2015.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE